IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GERALD LISAC )
and MARYANN LISAC, )
)
        Plaintiffs, ) TC-MD 120260D
)
    v. )
)
CLACKAMAS COUNTY ASSESSOR, )
)
        Defendant. ) **DECISION**

Plaintiffs appeal the 2011-12 real market value of property identified as Account

00765684 (subject property). A telephone trial was held on August 6, 2012. John A. Lisac

(Lisac), a real estate agent with 33 years of experience and Plaintiff Gerald Lisac's brother

(Plaintiff), appeared on behalf of Plaintiffs. Geoff Bennett (Bennett), Clackamas County Senior

Appraiser, appeared on behalf of Defendant.

Plaintiffs' Exhibits 1 through 6 and Defendant's Exhibit A were admitted without

objection.

## I. STATEMENT OF FACTS

Bennett referenced Exhibit A as he described the subject property:

"The subject property is located in a rural area of unincorporated
Clackamas County, off Pete's Mountain Rd, referred to as the Peach Cove area.

"The subject is zoned TBE (Timber) in an unincorporated area of West
Linn.

"The subject property has not transferred ownership since June 2004 when
the plaintiff purchased the bare land [1.50 acres] for $549,000 and then built the
subject dwelling.

/ / /

/ / /

"The subject dwelling itself is a custom built ranch style home built in 2005 with a 700 square foot second floor bonus room above attached garage. The construction is of excellent quality, architectural design and appeal, with wood wrapped windows and extensive built-ins throughout the house. There is also a full outdoor kitchen with built in sink refrigerator and cabinets with granite countertops. The property is located on the banks of the Willamette River with 285 feet of river frontage. The position of the house results in a one of a kind view of the river, viewing the river directly upstream. The subject has an additional 1,300 square foot detached garage."

(*See* Def's Ex A at 4.)

Lisac testified that Plaintiffs are requesting a real market value of $1,150,000 as of the assessment date of January 1, 2011. (*See* Compl at 1.) He testified that "comparable 4 is an excellent comparable" because it is "extremely similar to my brother's house." Lisac referenced Plaintiffs' Exhibit 4, the "west side listing" for a three-level 5,961 square-foot structure located in Lake Oswego. He testified that according to the listing information that property was listed March 31, 2010, for $2,395,000 and closed on December 27, 2011, for $1,600,000. (Ptfs' Ex 4 at 2.) Bennett commented that this sale closed "almost 12 months after the assessment date." In response to Bennett's question, Lisac testified that he had not been "inside the house," but he "pulled up the color pictures" and "talked to the realtor." Bennett asked Lisac to acknowledge that to "get to the river" where the subject property is located, an individual had to cross a road. Lisac agreed, stating that he doesn't "like to drive the road" to his brother's house because it is a "three-quarter mile, almost one lane with pull outs." Lisac testified that comparing "Peach Cove" where is brother's home is located to "Lake Oswego," is not "apples to apples."

Lisac testified that Plaintiffs' "immediate neighbor" received a "$1,095,000 earnest money offer" that "was rejected." In his written statement, Plaintiff wrote that "my immediate neighbor next door neighbor has had his home, which is nearly half again the size of my home and of the same quality construction, on the market for approximately two years and has had one written offer for $1,095,000 a copy of which is attached." (Ptfs' Exs 1-2.) Lisac testified that "a

home just a few lots north" of Plaintiffs was built "shortly after my brother's house was built." (*See* Ptfs' Exs 1, 3.) In his written statement, Plaintiff wrote that "[t]his home at 228 SW Forest Cove Road * * * has the same river view, a larger dock, an infinity edge swimming pool, and more square footage." (*Id*. at 1.) Lisac testified that his brother's letter stated that he saw "nothing fair in being taxed approximately $10,000 per year more than my neighbor with a comparable but larger home." (*See id*.)

Bennett reviewed his appraisal report, testifying that he identified four properties as comparable to the subject property. (*See* Def's Ex A at 5, 15-16.) He testified that he selected properties that "sold closest to the assessment date." Bennett testified that each sale price was adjusted for time (one-third of one percent per month), size, number of bathrooms, fireplace, and overall quality. (*See id*. at 5, 8.) He testified that the size adjustment and quality adjustment were computed using the Oregon Department of Revenue Cost Factor book. (*See id*. at 8.) Bennett testified that adjustments were made for other amenities, *e.g.*, tennis courts, lack of detached garage, pool, and hook-up to public water and sewer. (*See id*. at 5, 8-9.)

Bennett testified that the "range of adjusted sale prices [] was $1,342,025 to $1,601,300." (*See* Def's Ex A at 19.) He testified that "[c]omp #1 is given the most weight due to the similar dwelling square footage and quality, lot size and river frontage, being service[d] by well and septic, date of sale and rural location." (*See id*.) Bennett testified that "[c]omp #3" was "also given weight due to its being serviced by well and septic, similar to the subject and its rural location." (*See id*.) He stated that "[c]omps #2 and #4 are given secondary weight due to the dissimilarities between them and the subject." (*See id*.)

Bennett testified that based on the "cost approach" he determined the subject property's real market value to be $1,829,613. (*See* Def's Ex A at 17-19.) He testified that the "cost

approach was used and the resulting value will be given secondary weight in the overall value reconciliation." (*See* Def's Ex A at 19.) Bennett concluded that the "market approach" was "the best indicator of value as it shows arms-length transactions between an informed buyer and seller that are not under any distress and therefore will be given the most weight. * * * **The Market and Cost approaches show the estimated market value on January 1, 2011 to be $1,550,000**." (*See id*.) (Emphasis in original.)

## II. ANALYSIS

The issue before the court is the subject property's real market value as of January 1, 2011. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[1] ORS 308.205(1) defines real market value as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

Real market value is determined, in accordance with the statute, by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); *see also* OAR 150-308.205-(A)(2)(a). The valuation approach to be used is a question of fact to be determined on the record. *Pacific Power and Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

/ / /

---

[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011.

Bennett's appraisal report presented a comparable sales approach. (Def's Ex A.) Plaintiffs relied on listings for neighboring properties and property listings ("west side listings" and "east side listings") located "on the Willamette River." (Ptfs' Exs 3 through 5.) Neither party considered the income approach.

In a case such as this one before the court, the comparables sales approach may be used to value improved properties. *Chambers Mgmt. Corp. v. Lane County Assessor*, TC-MD No 060354D, WL 1068455 at *4 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)). Defendant adopted OAR 150-308.205-(A)(2)(c), which states that, "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

As the party seeking affirmative relief, Plaintiffs bear the burden of proving that their subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (Jul 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). Plaintiffs must present the greater weight of evidence to support their requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real

estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

In the case before the court, Plaintiffs did not present a comparable sales approach. Plaintiffs did not present any competent evidence of the subject property's real market value as of the date of assessment, such as an appraisal report or testimony of an appraiser. Lisac relied on his 33 years of real estate experience to support the requested real market value and listings for various properties. However, he made no adjustments to the listings for any of the differences between the subject property and each listed property. Lisac relied on a written offer for a neighboring property dated more than six months after the assessment date that "was nearly half again the size of" the subject property. (Ptfs' Exs 1-2.) He made no adjustments for size, date, or similar differences and offered no evidence to show that a listing meets the statutory requirement of a confirmed arm's-length transaction. Lisac presented no evidence of adjusted arm's-length completed transactions that he verified. *See* OAR 150-308.205-(A)(2)(c).

Plaintiffs' evidence in support of their requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof ***." *Reed*, 310 Or at 265. Unfortunately, Plaintiffs failed to carry their burden of proof.

Even though Plaintiffs failed to carry their burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.427; ORS 305.412. Bennett, a registered appraiser, submitted an adjusted comparable sales analysis for the subject property, adjusting the sale prices

and verifying the sale transactions of the comparable properties. (Def's Ex A at 8, 22, and 27.) He reconciled his adjusted comparable sales analysis and cost approach, determining a real market value of $1,550,000. (*Id*. at 19.) Bennett's determination of real market value was in compliance with the statutory requirement and Oregon Department of Revenue Administrative Rule. The court accepts Defendant's determination.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs failed to carry their burden of proof. The court accepts Defendant's determination of the subject property's real market value. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of October 2012.

 

 

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on October 2, 2012. The Court filed and entered this document on October 2, 2012.*